**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

─────────────────────────────────────

In re: JOHNS-MANVILLE CORP., et al,    :    **04 Civ. 8001 (JGK)**
                                        :    **(Lead Case)**
                     Debtors.       :
                                          :    <u>**OPINION & ORDER**</u>

─────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

This case relates to the bankruptcy of Johns-Manville Corporation ("Manville"), the world's largest supplier of asbestos. Under pressure from asbestos litigation, Manville filed for bankruptcy in August 1982 in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Since Manville's bankruptcy filing, asbestos plaintiffs have also tried to sue insurers of Manville, including Travelers Indemnity Company, Travelers Casualty and Surety Company, and their related entities (collectively, "Travelers"), who together were Manville's primary insurer. As part of Manville's reorganization plan, the Bankruptcy Court (Lifland, <u>Bankruptcy J.</u>) issued in 1986 an injunction that barred suits against Manville's insurers - including Travelers - and directed litigation by potential claimants instead against the Manville Personal Injury Settlement Trust. (Order Confirming Debtors' Second Amended and Restated Plan of Reorganization, dated Dec. 22, 1986 (Docket No. 3414) ("Confirmation Order").)

However, various groups of plaintiffs have since filed direct actions against Travelers and other insurers (the "Direct Action Suits"), arguing that the insurers had primary liability to claimants because they misled potential claimants about the dangers of asbestos. These suits were brought under the statutory law of various states, including Hawaii, and under the common law. Three classes of plaintiffs thereafter settled with Travelers: the "Statutory Direct Action Plaintiffs," the "Hawaii Plaintiffs," and the "Common Law Plaintiffs" (collectively, the "Plaintiff Appellees"). The Bankruptcy Court granted Travelers' motion to approve the settlements.

In conjunction with the settlements - which totaled almost $500 million - and after an evidentiary hearing, the Bankruptcy Court issued a "Clarifying Order" on August 17, 2004 that made it plain that the Direct Action Suits against Travelers were barred by the original 1986 injunction, and barred further lawsuits against Travelers, including any claims for contribution or indemnity. (Order Approving Settlement of the Statutory, Hawaii and Common Law Direct Actions and Clarifying Confirmation Order, Including Insurance Settlement Order and Channeling Injunction, dated Aug. 17, 2004 (Docket No. 3751) ("Clarifying Order"), at ¶¶ 6-8, 10.) The Clarifying Order also included a judgment reduction provision that reduced the judgment obtained in Direct Action Suits against any objecting insurer by the greater of

either a) the amount that the relevant plaintiff received in the settlement, or b) the amount that the non-settling insurer would have been entitled to obtain from Travelers in contribution or indemnity, had Travelers been a party to the litigation. The Bankruptcy Court supported its actions with its Findings of Fact and Conclusions of Law Regarding Travelers Motions for Approval of Certain Settlement Agreements and for the Entry of a Clarifying Order, dated August 17, 2004 (Docket No. 3750), available at 2004 WL 1876046 (cited herein as "FOF" or "COL," or together, as the "Bankruptcy Court's Findings").

Continental Casualty Company ("Continental"), Chubb Indemnity Insurance Company ("Chubb"), and OneBeacon America Insurance Company ("OneBeacon") (collectively, the "Objecting Insurers") are other insurers who have objected to the settlement and have appealed from the Bankruptcy Court's Findings and Clarifying Order. Certain asbestos claimants ("Objecting Claimants") also have objected to the settlement and have appealed.[1] The appellants challenge, among other things, the subject matter jurisdiction of the Bankruptcy Court over Direct Action Suits against Travelers, a non-debtor. In turn, the Plaintiff Appellees have moved to dismiss the Objecting Insurers' appeals on the grounds of lack of standing.

---

[1] The Objecting Claimants identify themselves as the "Asbestos Personal Injury Plaintiffs," who are six individual claimants, and the "Cascino Asbestos Claimants," who are represented by Michael Cascino, Esq. (Objecting Claimants

**I.**

The facts in this case, catalogued in detail in the Bankruptcy Court's Findings of Fact, are as follows.

**A.**

Manville was the world's largest producer of asbestos. (FOF at ¶ 3; 2004 WL 1876046, at *2.)  Faced with overwhelming asbestos-related litigation, on August 26, 1982 Manville filed a voluntary petition for reorganization under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101 et seq.  Four years later, on December 22, 1986, the Bankruptcy Court entered an order confirming Manville's Second Amended and Restated Plan of Reorganization (the "Plan"), which established the Manville Personal Injury Settlement Trust ("Manville Trust") to pay personal injury claims arising from exposure to asbestos.  See Kane v. Johns-Manville Corp., 843 F.2d 636, 640-41 (2d Cir. 1988) (describing the Plan, which was upheld on appeal).  This Confirmation Order also incorporated by reference provisions from an insurance settlement order previously issued by the Bankruptcy Court on December 18, 2006 ("Insurance Settlement Order"), which enjoined insurance policy-related litigation against certain insurers of Manville, including Travelers.  (FOF ¶¶ 61-63; 2004 WL 1876046, at *15-16.)

Brief at 1, nn. 1 and 2.)

Travelers was Manville's primary insurer from 1947 through 1976, providing comprehensive general liability coverage and other insurance policies. See In re Johns-Manville Corp., 33 B.R. 254, 260-61 (Bankr. S.D.N.Y. 1983). Over the course of the Manville insurance relationship, Travelers investigated asbestos claims, funded litigation defense efforts, and learned about the risks of asbestos. After reviewing considerable testimony and evidence of Travelers' involvement in Manville's asbestos cases, the Bankruptcy Court concluded as a factual matter that "Travelers learned virtually everything it knew about asbestos from its relationship with Manville." (FOF ¶ 50; 2004 WL 1876046, at *13.) While other Travelers policyholders also faced asbestos litigation, the Bankruptcy Court rejected allegations from other parties that Travelers learned of any asbestos risks from other sources that it did not already know from the Manville relationship. (See Complaint in Wise v. Travelers Indem. Co., No. 01-C-599 (W. Va. Cir. Ct., Berkely County) (Docket No. 3415, Ex. L), at ¶¶ 79-110 (a Direct Action Suit alleging Travelers' knowledge from other sources).)

Soon after Manville filed for bankruptcy, Travelers and other Manville insurers became enmeshed in so-called "direct action" suits by asbestos plaintiffs. Manville factory workers sued Travelers pursuant to the Louisiana Direct Action Statute, La R. S. 22:655. (FOF ¶ 55; 2004 WL 1876046, at *14, citing

Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 546-48 (5th Cir. 1983) (discussing direct action claims against Manville's insurers).) Travelers also faced claims from vendors of Manville products, who claimed that Travelers owed duties arising out of its insurance policies and relationship with Manville. (FOF ¶ 56; 2004 WL 1876046, at *14, citing MacArthur Co. v. Johns-Manville Corp., 837 F.2d 90-91 (2d Cir. 1988) (discussing one such claim).) There were also a host of contribution claims, cross claims, and indemnity claims between and among virtually every company that had insured Manville in its long history. (FOF ¶ 57; 2004 WL 1876046, at *15.) Finally, Travelers and the other insurers were embroiled in a contentious coverage dispute with Manville.

The Insurance Settlement Order, considered the "cornerstone" of the Manville reorganization, involved Travelers contributing nearly $80 million to the bankruptcy estate in exchange for an injunction that channeled all claims related to policy claims to the Manville Trust and a complete release for Travelers of liabilities that were related to or based on Manville. (FOF ¶¶ 58-61; 2004 WL 1876046, at *15.) With the Insurance Settlement Order and the Confirmation Order (together, the "1986 Orders"), Travelers thought it had secured finality and a full and complete release of liabilities related to Manville.

**B.**

Nonetheless, various groups of plaintiffs afterwards filed the Direct Action Suits against Travelers (as well as other Manville insurers).  The Statutory Direct Action Plaintiffs filed suit in various states, including Hawaii, alleging that Travelers conspired to violate state laws prohibiting unfair insurance trade and settlement practices.  They also allege that Travelers was responsible for coordination of the national defense effort against asbestos litigation and its allegedly fraudulent perpetuation of the "state of the art" defense.  (Id. at ¶¶ 73-79; 2004 WL 1876046, at *18-19.)  The Common Law Plaintiffs allege that Travelers violated certain common law duties to them when it failed to disclose what it had learned about asbestos hazards from Manville, and that Travelers conspired with Manville and other insurers to suppress such knowledge.  (Id. at ¶¶ 80-88; 2004 WL 1876046, at *18-19.)

On June 19, 2002, Travelers moved the Bankruptcy Court to enjoin these suits pursuant to the 1986 Orders.  The Bankruptcy Court issued a temporary restraining order prohibiting further prosecution of certain lawsuits against Travelers, and this order was subsequently extended in scope and duration.  (Id. at 1; 2004 WL 1876046, at *1.)  The Bankruptcy Court held a series of hearings on the motion, and on August 1, 2002 referred the matter to mediation and appointed the Honorable Mario M. Cuomo, former

Governor of the State of New York, as mediator. The result of
the mediation was that in November 2003, Travelers entered into a
settlement agreement with the Statutory Direct Action Plaintiffs
pursuant to which Travelers agreed to pay $360 million. (Id. at
¶ 96; 2004 WL 1876046, at *22.) In May 2004, Travelers settled
with the Common Law Plaintiffs for $70 million, and settled with
the Hawaii Plaintiffs for $15 million. (Id. at ¶¶ 101, 105; 2004
WL 1876046, at *22-23.) The settlements provided for the
creation of separate funds to compensate the plaintiffs in each
of the respective classes. (Id. at ¶¶ 98, 102, 105; 2004 WL
1876046, at *22-23.) These settlements were conditioned upon the
entry of an order by the Bankruptcy Court to clarify that the
Direct Action Suits were always prohibited by the 1986 Orders.

Continental, Chubb, OneBeacon, and the Objecting Claimants
filed objections to the approval of these settlements in the
Bankruptcy Court. Continental, a Manville insurer that was also
sued in the Direct Action Suits, argued that the Bankruptcy Court
did not have subject matter jurisdiction to bar its contribution
and indemnification claims against Travelers. Chubb, a non-
Manville insurer also sued in Direct Action Suits, similarly
objected. OneBeacon, one of the Manville insurers who settled in
1986 and who was allegedly covered by the 1986 Orders, argued
that the injunction should protect it from Direct Action Suits as

well.  The Objecting Claimants complained of defects in the
settlement with the Common Law Plaintiffs.

The Bankruptcy Court held an evidentiary hearing on the
proposed settlements on July 6, 2004, and issued the Clarifying
Order and the Bankruptcy Court's Findings on August 17, 2004.
These appeals followed.

## II.

The Court first addresses the Plaintiff Appellees' motions
to dismiss the appeals of Continental, Chubb, and OneBeacon for
lack of standing.  The Plaintiff Appellees essentially argue that
because the Objecting Insurers are protected by the judgment
reduction provision, they suffer no injury from the Clarifying
Order, and thus have no standing to appeal.

The appellants bear the burden of demonstrating that they
have standing.  In re School Asbestos Litig., 921 F.2d 1330, 1332
(3d Cir. 1990).  "To establish standing to appeal a settlement, a
non-settling defendant may not merely claim an interest in the
lawsuit but must show some cognizable prejudice to a legal
relationship between it and the settling parties."  Id.  The
appellant must be a "person aggrieved" - "a person directly and
adversely affected pecuniarily by the challenged order of the
bankruptcy court."  Int'l Trade Admin. v. Rensselaer Polytechnic
Institute, 936 F.2d 744, 747 (2d Cir. 1991) (internal citation
and quotation marks omitted); see also In re Combustion

Engineering, Inc., 391 F.3d 190, 214 (3d Cir. 2004); In re PWS

Holding Corp., 228 F.3d 224, 248 (3d Cir. 2000). The "person

aggrieved" standard is more stringent than the constitutional

test for standing. Combustion Engineering, 391 F.3d at 215; PWS

Holding, 228 F.3d at 248.

The Plaintiff Appellees argue that the Objecting Insurers

have failed to show that they are "persons aggrieved" by the

Clarifying Order, because even if the insurers' potential

contribution or indemnity actions against Travelers are barred,

the judgment reduction provision protects the insurers'

interests.[2] The Plaintiff Appellees contend that this judgment

reduction provision is similar to the one in School Asbestos,

where the Third Circuit Court of Appeals held that appellants did

not have standing to challenge a settlement that "recognizes the

existence of indemnification and contribution rights of non-

settling defendants and the Order approving the settlement

---

[2] The relevant judgment reduction provision in Paragraph 14 of the Clarifying Order states:

> Any judgment obtained against … any objecting insurer … regardless of whether such Insurer was a settling Manville insurer, with respect to any claim asserted in any lawsuit that is enjoined as to Travelers and not enjoined as to said Insurer shall be reduced by the greater of: (a) the amount (if any) the Claimant has recovered or is entitled to recover from the Statutory Direct Action Settlement Fund and/or the Hawaii Direct Action Settlement Fund and/or the Common Law Direct Action Settlement Fund to the extent that the Insurer is entitled to such a reduction for that amount under the applicable state law; or (b) to the extent permitted under applicable state law, the amount or percentage (up to 100%) that the Insurer would have been able to recover from Travelers, whether by contribution, indemnity or otherwise under applicable state law, had Travelers been joined in said lawsuit and/or sued for indemnity and/or contribution in a separate

contains no ruling purporting to limit any claims non-settling defendants may have." School Asbestos, 921 F.2d at 1333. The Plaintiff Appellees also rely on Zupnick v. Fogel, 989 F.2d 93 (2d Cir. 1993), which rejected standing to challenge a settlement with a judgment reduction provision, but that case is inapplicable because that settlement agreement was not binding on the non-settling defendants. Id. at 99.

Neither the settlements in School Asbestos nor Zupnick included a bar order extinguishing the non-settling defendants' indemnification and contribution rights, which the Third Circuit Court of Appeals later ruled did create a "cognizable prejudice" that permitted standing to appeal a settlement. Eichenholtz v. Brennan, 52 F.3d 478, 482-83 (3d Cir. 1995); see also In re Orthopedic Bone Screw Products Liability Litig., MDL No. 1014, 1997 WL 164237, at *4 (E.D. Pa. March 26, 1997) (finding standing to challenge a settlement that included a bar order and a judgment reduction provision, and distinguishing School Asbestos as not containing a bar order).

The Plaintiff Appellees also cite several other cases upholding settlements that contain bar orders and judgment reduction provisions, but these cases did not involve a challenge to the appellants' standing. See, e.g., Gerber v. MTC Electronic Technologies Co., Ltd., 329 F.3d 297, 306 (2d Cir. 2003) (finding

---

lawsuit.

that "judgment credit adequately compensates the non-settling defendants for their indemnity and contribution claims"); In re Worldcom, Inc. ERISA Litig., 339 F. Supp. 2d 561, 568 (S.D.N.Y. 2004) (noting that courts may approve settlement with bar orders as long as there is a proper set-off provision).  Other cases cited by the parties rejected on the merits settlements with bar orders and judgment reduction provisions because non-settling defendants were not adequately compensated for the bar against contribution and indemnification claims.  See, e.g., In re Masters Mates & Pilots Pension Plan and IRAP Litig., 957 F.2d 1020, 1032-33 (2d Cir. 1992); In re Jiffy Lube Sec. Litig., 927 F.2d 155, 161 (4th Cir. 1991).

These cases demonstrate that the question of whether a judgment reduction provision compensates for a bar order against contribution and indemnification claims is a question on the merits of the settlement, and not an issue of standing.  Cf. Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 751 n.13 (5th Cir. 1995) ("[T]he fact that the injunction bars NUFIC and Feld in any way gives them standing to appeal it.").  For example, in Eichenholtz, the Court of Appeals found that non-settling defendants had standing to appeal, even though it ultimately found on the merits that the judgment reduction provision adequately compensated for the bar order.  Eichenholtz, 52 F.3d at 483, 487.

The Ninth Circuit Court of Appeals interpreted School Asbestos and Zupnick as holding that it is possible that "a judgment reduction credit may divest non-settling defendants of standing if it is written in such a way as to ameliorate any harm caused by other provisions in the settlement agreement." Smith v. Stevens, 421 F.3d 989, 1000 (9th Cir. 2005).  But Smith also recognized that measuring any alleged harm from an inadequate judgment reduction provision was still a question of merits, and that standing may be accepted by considering the appellants' allegations of the provision's inadequacy on their face.  Id. at 1001 ("We are not reviewing an order entering summary judgment or dismissing a complaint, where a more searching inquiry into the factual and legal basis of a claim might be productive.").  In Smith, the Court of Appeals found standing to challenge a bar order despite a judgment reduction provision because the appellants alleged the provision failed to compensate for the elimination of "'indemnity or other []' claims." Id.  The Court of Appeals noted that the fact that appellants "have not articulated the precise nature of the 'indemnity or other []' claims they are barred from asserting does not demonstrate a lack of formal legal prejudice." Id.

Here, the Objecting Insurers raise several arguments concerning why the judgment reduction provision in the Clarifying Order is inadequate to compensate for the bar order.  Among other

things, the Objecting Insurers argue that the Clarifying Order is potentially unenforceable, would fail to provide the appropriate set-off in certain jurisdictions, and limits their ability to obtain necessary discovery against Travelers.  While the Plaintiff Appellees dispute these claims, such arguments go to the merits of the appeal, and not to the question of standing.[3]

The motions to dismiss the appeals are denied.

## III.

The Court next addresses the merits of the various appeals. Continental, Chubb, OneBeacon, and the Objecting Claimants appeal from the Bankruptcy Court's Findings (Docket No. 3750) and the Clarifying Order approving the Traveler's settlement (Docket No. 3751).  The Court reviews conclusions of law by the Bankruptcy Court de novo, but accepts the Bankruptcy Court's findings of facts unless "clearly erroneous."  See Fed. R. Bankr. P. 8013; In re Halstead Energy Corp., 367 F.3d 110, 114 (2d Cir. 2004).

## A.

Appellants Continental, Chubb, and the Objecting Claimants argue that the Bankruptcy Court did not have subject matter

---

[3] OneBeacon makes the separate argument that it has standing to appeal the Clarifying Order based on the Order's failure to provide similar protection for OneBeacon from Direct Action Suits.  Chubb makes the separate argument that it has standing to challenge the order purporting to clarify the 1986 injunction because it never had the opportunity to challenge the original injunction.  Because the Court finds that all the Objecting Insurers have standing because of alleged cognizable prejudice from the bar order, the Court need not address these separate arguments for standing purposes.

jurisdiction to issue its injunction barring suits against Travelers in the Clarifying Order. A bankruptcy court's subject matter jurisdiction is limited to controversies "arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a); see also 28 U.S.C. § 1334(b).

As an initial clarification, the Objecting Claimants incorrectly argue that there can be no "related to" jurisdiction for the 2004 Clarifying Order, because post-confirmation, there was no longer a Manville bankruptcy estate for the dispute to "relate to." (Objecting Claimants Brief at 15-16, citing Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984).) However, neither the Bankruptcy Court nor the appellees invoke "related to" jurisdiction as a basis for the Clarifying Order. Instead, the Bankruptcy Court held that it was "enforcing its own Orders and thus its jurisdiction is derivative of the original jurisdiction" of the previous 1986 Orders. (COL ¶ 8; 2004 WL 1876046, at *28.) "A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization." In re Petrie Retail, Inc., 304 F.3d 223, 230 (2d Cir. 2002). In confirming the Plan, the Bankruptcy Court explicitly retained jurisdiction to enforce its orders and injunctions. (Confirmation Order ¶ 28.) The Objecting Claimants' argument notwithstanding, the parties agree that the Bankruptcy Court had subject matter

jurisdiction to interpret and enforce the 1986 Orders.  (Tr. of
Feb. 22, 2006 hearing, at 22.)

Thus, the gravamen of the appellants' challenge to subject
matter jurisdiction is that the injunction in the Clarifying
Order is broader than the 1986 Orders, and that, even if the 1986
Orders contemplated Direct Action Suits, the Bankruptcy Court had
no jurisdiction in 1986 to bar such suits.  This challenge raises
three issues.  First, the Court must determine whether the
Bankruptcy Court's conclusion of law that the Direct Action Suits
violated the 1986 Orders was correct.  Second, the Court must
determine whether the Bankruptcy Court had subject matter
jurisdiction in 1986 to enjoin Direct Action Suits.  Third, if
jurisdiction is established, the Court must determine its scope
with respect to approving settlements, imposing "gate-keeping"
requirements, and enjoining Direct Actions Suits not involving
Manville.

## 1.

The first issue is whether the Bankruptcy Court correctly
concluded that the Direct Actions Suits and any related
contribution and indemnification claims were covered by the 1986
Orders.[4]  (See COL ¶¶ 25-35; 2004 WL 1876046, at *32-34.)  The

---

[4] The parties dispute which standard of review to use to evaluate the
Bankruptcy Court's conclusion.  The appellees argue that a judge's
interpretation of the judge's own order is accorded deference and "will not be
disturbed 'absent a clear abuse of discretion.'"  Truskoski v. ESPN, Inc., 60
F.3d 74, 77 (2d Cir. 1995) (per curiam) (citation omitted, also noting that it
is "peculiarly within the province of the district court ... to determine the

Bankruptcy Court found that the Direct Action Suits violated the

Insurance Settlement Order, which was incorporated into the

Confirmation Order.[5]  The relevant provision of the Insurance

Settlement Order provided:

> [A]ll Persons are permanently restrained and enjoined
> from commencing and/or continuing <u>any suit, arbitration
> or other proceeding of any type or nature</u> for Policy
> Claims against any or all members of the Settling
> Insurer Group [which includes Travelers Indemnity
> Company and its affiliates] ....

(Insurance Settlement Order dated Dec. 16, 1986, at 172, ¶

23.2(F) (emphasis added), attached as Exhibit D to Docket No.

3414.)  The same Order defines "Policy Claims" broadly as:

> any and all claims, demands, allegations, duties,
> liabilities and obligations (whether or not presently
> known) which have been, or could have been, or might
> be, asserted by any Person against any or all members
> of the JM Group or against any or all members of the
> Settling Insurer Group <u>based upon, arising out of or
> relating to any or all of the [insurance policies]</u>.

meaning of its own order").  The appellants counter that the Bankruptcy
Court's interpretation of its own Confirmation Order should not be given such
weight, because the "Bankruptcy Court's interpretation of the text of the
Plan, the Confirmation Order, and the Final Decree are conclusions of law
reviewed <u>de</u> <u>novo</u>."  <u>In re Duplan Corp.</u>, 212 F.3d 144, 151 (2d Cir. 2000)
(citing <u>Bellefonte Reins. Co. v. Aetna Cas. and Sur. Co.</u>, 903 F.2d 910, 912
(2d Cir. 1990) ("The proper standard for appellate review of a pure textual
construction by the district court, whatever the procedural posture of the
case, is <u>de</u> <u>novo</u>.")).  It is unnecessary to resolve this dispute because the
clear language of the 1986 Orders supports the Bankruptcy Court's conclusion
even under <u>de</u> <u>novo</u> review.

[5] The Objecting Claimants argue that the relevant injunction language from the
Insurance Settlement Order was not incorporated in the Confirmation Order, and
was thus abandoned.  This argument has no merit.  As the Bankruptcy Court
concluded in its Findings of Fact, the Insurance Settlement Order was
specifically incorporated in Paragraph (gg) of the Confirmation Order.  (FOF ¶
63; 2004 WL 1876046, at *16.)  Moreover, the Second Circuit Court of Appeals,
in upholding the very same injunction in <u>MacArthur</u>, cited the language from
the Insurance Settlement Order as being in effect.  <u>MacArthur</u>, 837 F.2d at 91.

(Insurance Settlement Order at 165, ¶ 23.1 (emphasis added).)
Given the broad language used in the order to describe barred
suits – all suits "based upon, arising out of or relating to any
or all" of the insurance policies – a plain reading shows that
this would include the Direct Action Suits.  As the Bankruptcy
Court concluded: "The Court's repeated use of the term 'arising
out of' and 'related to' were not gratuitous or superfluous; they
were meant to provide the broadest protection possible to
facilitate global finality for Travelers as a necessary condition
for it to make a significant contribution to the Manville
estate."  (COL ¶ 23; 2004 WL 1876046, at *31.)  The gravamen of
the Direct Action Suits were acts or omissions by Travelers
arising from or relating to the Travelers' insurance coverage of
Manville.  (COL ¶ 25; 2004 WL 1876046, at *32.)

The Bankruptcy Court also concluded that the Direct Action
Suits violated additional provisions in the Confirmation Order,
which provided that:

> All Persons and Government Units are hereby stayed,
> restrained and enjoined from taking one or more of the
> following actions for the purpose of, <u>directly or
> indirectly</u>, collecting, recovering or receiving payment
> of, on or with respect to any Claim, Interest or Other
> Asbestos Obligation[6] [including] ... [c]ommencing,

---

[6] The term "Other Asbestos Obligation" is defined in Exhibit A to the Plan as:

> (a) all debts, obligations or liabilities (under any theory of
> law, equity or admiralty) ... for death, personal injuries or
> personal damages (whether physical, emotional or otherwise) to the
> extent caused, directly or indirectly, by exposure to asbestos
> (alone or as contained in asbestos-containing products) and
> arising or allegedly arising, directly or indirectly, from acts or
> omissions prior to the Confirmation Date of one or more of the

conducting, or continuing in any manner, <u>directly or indirectly</u>, any suit, action or other proceeding (including without limitation any thereof in a judicial, arbitral, administrative or other forum) against or affecting Debtors, any of the Debtors' Subsidiaries, the Canadian Companies or <u>any of the Settling Insurance Companies</u> or any property of any of the foregoing or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing, or any property of any such transferee or successor ....

(Confirmation Order at ¶ 29 (emphasis added).)   The Direct Action Suits are actions against one of the "Settling Insurance Companies" to receive payment on an "Other Asbestos Obligation," and thus barred by the Confirmation Order as well.   The Bankruptcy Court explained that if the Direct Action plaintiffs had been compensated 100% by Manville or the Manville Trust, they would have had no economic basis to bring claims against Travelers for its Manville-related conduct.   It was only because those claimants were compensated less than 100% that they sought further compensation from Travelers.   But the possibility of seeking additional compensation from Travelers for such claims

---

Debtors including, without limitation, all obligations or liabilities for compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages) and punitive damages and (b) all warranty, guarantee, indemnification or contribution liabilities or obligations, if any, of any of the Debtors to any other Person to the extent that such warranties, guarantees, indemnifications or contribution responsibilities cover claims against such other Person that would, if such claims had been made directly against any of the Debtors, constitute Other Asbestos Obligations under Clause (a) above.

(Docket No. 3415, Ex. H.)

was foreclosed by the broad injunction entered in the Confirmation Order.  (COL ¶¶ 30-32; 2004 WL 1876046, at *33.)

It is reasonable to interpret the 1986 Orders as giving Travelers such broad protection against Direct Action Suits to induce it to contribute funds to the Manville Trust, which was key to the confirmation of the Manville Plan.  The Bankruptcy Court "understood that insurers would not contribute funds [to the Manville Trust] without receiving assurances that any liabilities arising from or relating to their insurance relationships with Manville would be fully and finally resolved." (COL ¶ 20; 2004 WL 1876046, at *30.)  This conclusion is bolstered by the fact that even in 1986, Travelers was already enmeshed in direct action litigation in Louisiana.  (FOF ¶ 55; 2004 WL 1876046, at *14, citing Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 546-48 (5th Cir. 1983) (discussing direct action claims by Manville factory workers against Travelers); see also In re Johns-Manville Corp., 33 B.R. 254, 265 (Bankr. S.D.N.Y. 1983) ("Direct action suits have been filed, and in Louisiana there are almost two hundred, in which Travelers has been named as a party Defendant.")

Similarly, the contribution and indemnity claims of the Objecting Insurers were barred by the same broad provisions of the 1986 Orders.  The 1986 Orders applied to "all Persons," and were not limited to individual plaintiffs with asbestos-related

injuries.  The Orders also provided protection from other
insurance companies who sought to hold Travelers liable
indirectly for the damages that it could not be held directly
liable to the individual claimants.  The other insurance
companies were precluded from suing Travelers for claims "based
upon, arising out of, or relating to any or all of the [insurance
policies]."  (Insurance Settlement Order at 165, ¶ 23.1; see also
COL ¶¶ 34-35; 2004 WL 1876046, at *33-34.)

Therefore, the Bankruptcy Court correctly interpreted its
own 1986 Orders as covering the Direct Action Suits and the
related contribution and indemnification claims.

**2.**

Having determined that the 1986 Orders covered the suits at
issue, the next issue is whether the 1986 Orders themselves were
proper exercises of jurisdiction over non-debtors.  The starting
point for the resolution of this issue is MacArthur Co. v. Johns-
Manville Corp., 837 F.2d 89 (2d Cir. 1988), which the Bankruptcy
Court cites as having already considered and rejected a
jurisdictional challenge to the 1986 Orders.  (COL ¶¶ 8-9; 2004
WL 1876046, at *28.)

In MacArthur, the plaintiff alleged it was a coinsured under
some of Manville's insurance polices pursuant to "vendor
endorsements" contained in the policies.  MacArthur, 837 F.2d at
90.  The plaintiff argued that its "vendor endorsement" claims

against the settling Manville insurers were too remote from the Chapter 11 proceedings for the Bankruptcy Court to exercise jurisdiction, and thus the 1986 Orders could not be enforced against it. The plaintiff characterized its interest in the vendor endorsements as contractual claims against the non-debtor insurance companies over which the Bankruptcy Court had no jurisdiction. The Second Circuit Court of Appeal held the plaintiff's claims were essentially derivative claims against the Manville insurance policies, which were property of the estate. Id. at 92. The Court of Appeals concluded that the Bankruptcy Court's broad jurisdiction over the property of the estate gave it jurisdiction over the plaintiff's claims. Id. at 93; see also 28 U.S.C. 1334(e)("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction ... of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.")

The Court of Appeals has since reaffirmed its analysis with regards to the 1986 Orders. See Kane v. Johns-Manville Corp., 843 F.2d 636, 643 n.4 (2d Cir. 1988) ("Kane also challenges the Injunction on the ground that it grants a discharge to non-debtor parties, who are not entitled to the protection of Chapter 11, specifically Manville's insurers and certain Manville subsidiaries. We have recently determined that the insurers may lawfully be protected from asbestos-related claims.") (citing

MacArthur); see also In re Joint Eastern and Southern Dist. Asbestos Litig., No. 95-5008, 1996 WL 77954, at *2 (2d Cir. 1996) (unpublished opinion regarding the same 1986 Orders) ("O'Malley's challenge to the Trial Courts' reaffirmation and continuation of the bankruptcy court's 1986 order enjoining suits against Manville and its insurers is without merit. Such an injunction is essential to the success of the Settlement, and its continuation was well within the discretion of the Trial Courts.") (citing Kane and MacArthur).

As part of its analysis, the MacArthur court compared the plaintiff's claims to "claims by asbestos victims against Manville's insurers in jurisdictions allowing direct actions against the insurers," which could properly be enjoined because judgment against the insurers would reduce the proceeds recoverable from the insurance policies, thus affecting the debtor's estate. MacArthur, 837 F.2d at 92 (citing GAF Corp. v. Johns-Manville Corp., 26 B.R. 405 (Bankr. S.D.N.Y. 1983), aff'd, 40 B.R. 219 (S.D.N.Y. 1984)). The Court of Appeals also adopted the reasoning of In re Davis, 730 F.2d 176, 183-84 (5th Cir. 1984) (per curiam) (rejecting claim that direct actions against insurers have no reasonable nexus with bankruptcy proceedings).

In Davis, the Fifth Circuit Court of Appeals found that insurance policies fell within the definition of "property of the estate" in 11 U.S.C. § 541(a)(1), thus establishing jurisdiction

over "direct action" claims that would diminish those policies. Id. at 184. The Court of Appeals refused to lift a stay of direct actions against Manville insurers because the "bankruptcy court ... has authority to issue a stay order intended to shield the insurers of Johns-Manville and its executives if the insurance policies constitute 'property of the estate.'" Id. Other courts have also adopted Davis' analysis. See, e.g., In re Forty-Eight Insulations, Inc., 54 B.R. 905, 908-09 (Bankr. Ill. 1985) (citing Davis and finding that direct actions suits under Illinois Insurance Code § 378 against insurers of a debtor asbestos product manufacturer violated the automatic stay because insurance policies are property of the debtor's estate).

It is clear from MacArthur and Davis that the Bankruptcy Court had jurisdiction over Travelers' insurance policies, and could act to protect them from dissipation by direct action claims by enjoining those claims and channeling them into the Manville Trust, into which the proceeds of the insurance settlement were also channeled. Suits that seek direct recovery authorized by state statutes from Travelers' insurance policies would reduce the estate's recovery from those policies, thus affecting the "property of the estate." Moreover, direct action claims that are derivative of the right to recover under these policies – such as claims for negligent undertaking or failure to settle – can similarly be enjoined to protect the property of the

estate.  Cf. MacArthur, 837 F.2d at 92 (approving the injunction

against MacArthur's vendor endorsement claims because they were

derivative of Manville's rights as the primary insured: "Such

derivative rights are no different in this respect from those of

the asbestos victims who have already been barred from asserting

direct actions against the insurers.")  Thus, the 1986 Orders had

subject matter jurisdiction to enjoin these types of direct

action claims.

This conclusion is also supported by legislation enacted by

Congress that explicitly authorized bankruptcy court injunctions

barring derivative claims against third party insurers.  The

Bankruptcy Reform Act of 1994 added to the Bankruptcy Code a new

section 524(g), which was modeled on the Manville injunction.[7]

Section 524(g)(4)(A)(ii) provides:

> [A]n injunction may bar any action directed against a
> third party who is identifiable from the terms of such
> injunction (by name or as part of an identifiable
> group) and is alleged to be directly or indirectly
> liable for the conduct of, claims against, or demands
> on the debtor to the extent such alleged liability of
> such third party arises by reason of ... the third
> party's provision of insurance to the debtor or a
> related party ....

11 U.S.C. § 524(g)(4)(A)(ii).  Congress thus explicitly indicated

that the Bankruptcy Court's subject matter jurisdiction extended

---

[7] The legislative history indicates that Congress modeled § 524(g) on the
channeling injunction in the Johns-Manville case, and sought to strengthen the
Manville injunction mechanisms through this codification without having to
reopen its case.  See H.R. Rep. 103-835, at 41 (1994), reprinted in 1994
U.S.C.C.A.N. 3340, 3349.

to claims against third party insurers arising from their insurance relationship with the debtor tortfeasor. Therefore, the Bankruptcy Court has jurisdiction over any claim arising from Travelers' insurance relationship with Manville by plaintiffs injured by Manville asbestos.

The appellants argue that the Direct Action Suits at issue here - unlike the direct actions pending at the time of the 1986 Orders - do not seek the proceeds of the insurance policies nor involve injuries from Manville products, but rather allege that Travelers breached its statutory duties or engaged in independent tortious conduct in defending insureds other than Manville.[8] While they attempt to characterize the Direct Action Suits as being unrelated to Manville, the Bankruptcy Court found as a fact that the gravamen of these suits is that Travelers learned of asbestos risks from its defense of Manville in asbestos-related claims, and failed to disclose or otherwise had suppressed this knowledge. (FOF at ¶¶ 73-88; 2004 WL 1876046, at *18-20.) Moreover, while appellants characterize the Direct Action Suits as not stemming from injuries by Manville products, the Bankruptcy Court concluded "as a factual matter, that essentially all potential asbestos claimants - including all plaintiffs with Direct Action Claims - have been exposed to Manville asbestos

---

[8] The plaintiffs have candidly admitted that many of these theories of liability have never been accepted by any court. (FOF ¶ 81; 2004 WL 1876046, at *19.)

26

through Manville's pervasive asbestos mining, processing and manufacturing activities."  (Id. at ¶ 11; 2004 WL 1876046, at *5.)  The Bankruptcy Court then rejected the notion that plaintiffs could remove the connection to Manville by artful pleading:

> After the Court preliminarily enjoined prosecution of Direct Action Claims against Travelers pending final ruling on the merits, certain plaintiffs' lawyers violated the letter and the spirit of this Court's rulings by simply deleting the term "Manville" from their complaints - but leaving the substance unchanged.

(Id. at ¶ 89; 2004 WL 1876046, at *21.)

The Bankruptcy Court considered the appellants' reference to Travelers' conduct regarding other policyholders, but "other than the acknowledgement of the undisputed fact that there were other such insureds, the Court was not presented with a scintilla of evidence regarding the scope, duration or intensity of any such relationship."  (Id. at ¶ 49; 2004 WL 1876046, at *13.)  The Bankruptcy Court factually concluded that "Travelers learned virtually everything it knew about asbestos from its relationship with Manville," and accepted the "unrebutted" expert testimony of Professor George Priest, "a recognized expert in insurance litigation," that "the Direct Action Claims against Travelers 'inescapabl[y]' relate to its insurance relationship with Manville."  (Id. at ¶¶ 49-50; 2004 WL 1876046, at *13.)  The Bankruptcy Court also factually concluded that Travelers' conduct

in defending against Manville asbestos claims was directly

related to the insurance policies:

> Every dollar paid by Travelers on account of Manville -
> whether to Manville itself, to outside defense counsel
> hired to defend Manville, to Travelers employees
> inspecting or investigating Manville facilities or
> claims, or to asbestos claimants in satisfaction of
> judgments against or settlements with Manville -
> correlated to a specific provision in the policies that
> Travelers issued to Manville.

(Id. at ¶ 48; 2004 WL 1876046, at *13.) Because Travelers'

knowledge of asbestos and conduct in defending Manville arises

from the Manville insurance policies, and because the Direct

Action claimants were attempting to recover additional funds for

asbestos claims that they were unable to collect from the

Manville Trust, the Bankruptcy Court concluded that the Direct

Action Suits were, in fact, creatively pleaded attempts to

collect indirectly against the Manville insurance policies, and

that barring these claims was a proper exercise of jurisdiction.

(COL ¶¶ 25-32; 2004 WL 1876046, at *32-33.)

This analysis is persuasive and unrebutted by the

appellants.[9] Thus, the Court affirms the Bankruptcy Court's

conclusion that it had jurisdiction in 1986 to enjoin the Direct

---

[9] Continental challenges the factual finding that Travelers learned "virtually everything" about asbestos from Manville, citing a single complaint that alleges that Travelers learned of the hazards of asbestos from other sources. (See Complaint in Wise v. Travelers Indemnity Co., No. 01-C-599 (W. Va. Cir. Ct.) ¶¶ 79-110.) However, unproven allegations in a complaint fail to meet the heavy burden of showing "clear error" in the Bankruptcy Court's factual findings.

Action Suits.[10]  The Court also notes that Judge Lynch appeared to conclude similarly when rejecting a jurisdictional challenge to the June 24, 2003 preliminary injunction issued by the Bankruptcy Court temporarily enjoining the same Direct Action Suits at issue here.  See Carter v. Travelers Indemnity Co. (In re Johns-Manville Corp.), No. 03 Civ. 7173, 2004 WL 385118, *2 (S.D.N.Y. March 2, 2004) (plaintiff's "challenge to the bankruptcy court's jurisdiction is completely without merit").

**3.**

A final step remains, however, in determining whether the Bankruptcy Court's subject matter jurisdiction permitted other disputed provisions of the Clarifying Order, particularly the approval of the settlement of the Direct Action Suits and the "gate-keeping" provision.  The appellants also raise the possibility that the Clarifying Order impermissibly bars suits involving Travelers' conduct with respect to insureds other than Manville and asbestos injury completely unrelated to Manville. In light of the Bankruptcy Court's extensive factual findings regarding the breadth of Traveler's conduct on behalf of Manville and the pervasiveness of Manville's asbestos, the Court finds that such a possibility is unlikely.

---

[10] It also follows that because the Bankruptcy Court had jurisdiction to enjoin the Direct Action Suits, it had jurisdiction to enjoin the claims by other insurers against Travelers for contribution or indemnity.  Those claims are indirect efforts to hold Travelers liable for the same claims which the Bankruptcy Court had the power to enjoin.

Nonetheless, the jurisdictional analysis above makes clear that the Bankruptcy Court has no jurisdiction to bar a suit alleging tortious conduct by Travelers on behalf of a non-Manville insured, conduct that is unrelated to Manville and not based on any knowledge of asbestos hazard gained from Manville, and that did not involve Manville asbestos or asbestos products. Indeed, the Bankruptcy Court itself recognized the limits of its jurisdiction in the Clarifying Order by providing that:

> [N]othing in this Order shall enjoin ... claims arising from contractual obligations by Travelers to policyholders other than Manville, as long as Travelers [sic] alleged liability or the proof required to establish Travelers [sic] alleged liability is unrelated to any knowledge Travelers gained from its insurance relationship with Manville or acts, errors, omissions or evidence related to Travelers [sic] insurance relationship with Manville ....

(Clarifying Order ¶ 9(b).) The Clarifying Order also made clear that it was not enjoining "claims against Travelers by policyholders other than Manville ... for insurance proceeds or other obligations arising under any policy of insurance provided by Travelers to a policyholder other than Manville." (Id. at ¶ 9(a).)[11]

The Bankruptcy Court also included a "gate-keeping"

---

[11] Continental also argues that the Clarifying Order's definition of "Travelers" exceeded the scope of the Order's jurisdiction by including Travelers Casualty (formerly Aetna Casualty) and former Travelers affiliate Citigroup in addition to Travelers Indemnity. However, Aetna Casualty was explicitly similarly covered by the Insurance Settlement Order. The Clarifying Order properly barred suits against Citigroup as a Travelers affiliate that arise out of Travelers' insurance relationship with Manville; claims against Citigroup unrelated to Manville would not be covered.

provision to screen out suits that did not fall within its subject matter jurisdiction. (Id. at ¶ 9(c).) The Objecting Claimants challenge the jurisdictional basis for this gate-keeping provision, which requires future asbestos-related direct action claimants against Travelers to establish first before the Bankruptcy Court that their actions are not based on any relationship that Travelers had with Manville and do not violate the Bankruptcy Court's bar orders.[12] The Objecting Claimants argue that this exceeds the Bankruptcy Court's jurisdiction by requiring third parties with claims against Travelers unrelated to Mansville to make an application before the Bankruptcy Court before proceeding with their actions in state or federal court.

In response to such arguments, the Bankruptcy Court concluded that its bar orders have been "repeatedly violated by

─────────────────────────

(Clarifying Order ¶¶ 9(a) and (b).)

[12] The "gate-keeping" provision, found in Paragraph 9 of the Clarifying Order, provides:

> [N]othing in this Order shall enjoin:
>
> (c) the commencement of asbestos-related direct actions against Travelers arising out of any policy of insurance provided by Travelers to a policyholder other than Manville or involving acts or omissions in connection with such policies, provided that, prior to commencing any such action, the plaintiff shall, upon notice to Travelers, (i) make an application to this Court seeking leave to bring such action, upon representations that no allegations will be made nor evidence will be introduced relating to exposure to Manville asbestos, Travelers [sic] defense of Manville or Travelers [sic] knowledge or alleged knowledge concerning the hazards of asbestos directly or indirectly arising out of its insurance relationship with Manville, and (ii) obtain an order from this Court that the proposed direct action is not covered by the Confirmation Order, including the Insurance Settlement Order, the Channeling Injunction and this Order.

creative plaintiffs," and that its broad discretionary powers in enforcing its orders allowed it to make the initial determination of whether an asbestos suit against Travelers would violate its orders. (COL ¶¶ 39-42, 2004 WL 1876046, at *35-36.) The Bankruptcy Court relied on cases where parties before a court had previously violated that court's orders, see Berger v. Heckler, 771 F.2d 1556 (2d Cir. 1985), and cases relating to the scope of equitable relief to remedy a party's unlawful conduct. See Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1 (1971). At the July 6, 2004 hearing, the Bankruptcy Court also cited the automatic stay provision in 11 U.S.C. § 362 as the "ultimate gate-keeping statute" as support for the provision requiring a potential plaintiff to seek permission of the bankruptcy court before bringing a suit against Travelers. (July 6, 2004 Hearing Tr., at 179.) None of these arguments establish jurisdiction to act as a gate-keeper of claims against a non-debtor - as opposed to a debtor subject to the automatic stay.

While the Bankruptcy Court is authorized under 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," this broad statutory authority does not, in itself, provide jurisdiction. Combustion Engineering, 391 F.3d at 225. If "creative plaintiffs" violate the Bankruptcy Court's orders in their attempts to plead around the injunction, the Bankruptcy

Court has jurisdiction to find them in contempt.  But the Bankruptcy Court has no jurisdiction to screen, in the first instance, suits against a non-debtor that purport to assert claims unrelated to the debtor or the estate.  Moreover, the equitable powers of a court to enforce its orders against a recalcitrant party provide no basis for the Bankruptcy Court to require unspecified persons who may not be parties before the that Court to seek its approval before bringing lawsuits that may have no relationship to the Bankruptcy Court's prior orders.  Thus, the gate-keeping provision in Paragraph 9(c) must be vacated.

Finally, the appellants challenge the independent jurisdictional basis for the Bankruptcy Court's approval of the settlements of the Direct Action Suits.  The parties characterize the settlements as analytically distinct from the Bankruptcy Court's interpretation of the 1986 Orders.  Nonetheless, as the Bankruptcy Court found, the Direct Action Suits are violations of the 1986 Orders.  The motion by Travelers to enjoin the Direct Action Suits – as well as the possibility of contempt for disregarding the 1986 Orders - created a dispute properly before the Bankruptcy Court, which then referred this dispute to mediation.  The settlements are a product of the mediation and represent a resolution of a dispute within the Bankruptcy Court's jurisdiction.

Continental and Chubb argue that, having found that the Direct Action Suits violated the 1986 Orders, the Bankruptcy Court could not thereafter approve the settlement of those actions. They argue that jurisdiction was limited to finding the plaintiffs in those suits in violation of the outstanding orders. However, there was plainly a dispute over the scope of the Bankruptcy Court's 1986 Orders and the resolution of that dispute was within the Bankruptcy Court's jurisdiction. The settlement was only reached after considerable time and effort by a sophisticated mediator. It provided a level of additional certainty and repose for which Travelers was prepared to pay. The fact that other insurance companies question that choice did not deprive the Bankruptcy Court of jurisdiction. Thus, approving the settlements was a proper exercise of the Bankruptcy Court's jurisdiction.

In conclusion, the Bankruptcy Court has subject matter jurisdiction to enjoin the Direct Action Suits pursuant to the 1986 Orders and the Clarifying Order, but does not have jurisdiction to act as a "gate-keeper" and to review suits that purport not to relate to Travelers' relationship with Manville.

**B.**

Continental and Chubb argue that even if the Bankruptcy Court had subject matter jurisdiction over the Direct Action Suits, the Clarifying Order still exceeded the Bankruptcy Court's

statutory authority under 11 U.S.C. §§ 105(a) and 524(g).

Continental argues that extending the injunction barring suits against Travelers to include claims unrelated to Manville could not be essential to Manville's reorganization, and thus is beyond the statutory authority conferred by § 105(a).  This argument ignores the Bankruptcy Court's factual findings detailed above – which are not clearly erroneous – that the Direct Action Suits against Travelers were, in fact, indirect attempts to collect on the insurance policies, and that essentially all the plaintiffs in those suits were exposed to Manville asbestos.  Moreover, the Second Circuit Court of Appeals, in upholding the same injunction, noted it was necessary for the Manville reorganization.  MacArthur, 837 F.2d at 93 (citing § 105(a) as authority for the injunction, and also noting that § 105 "has been construed liberally to enjoin suits that might impede the reorganization process"); see also Kane, 843 F.2d at 643 n.4.

Chubb argues that the Bankruptcy Court could not expand the original 1986 Orders except by an injunction that satisfied the requirements of 11 U.S.C. § 524(g), and that the Clarifying Order did not comply with § 524(g) because the new settlement funds were not placed in the Manville Trust, which Chubb contends is required by 11 U.S.C. § 524(g)(4)(B)(ii).  This argument also fails, because the injunctions in the 1986 Orders pre-dated the enactment of § 524(g) in the Bankruptcy Reform Act of 1994, and

thus falls within the "grandfather" provision under 11 U.S.C. §
524(h).  Section 524(h) provides that "[f]or purposes of
subsection (g) ... if an injunction of the kind described in [§
524(g)] was issued before the date of the enactment of this Act,
as part of a plan of reorganization confirmed by an order entered
before such date, then the injunction shall be considered to meet
the requirements of [§ 524(g)]" if it meets certain requirements,
all of which are applicable here.  Thus, the injunctions in the
1986 Orders are within the Bankruptcy Court's statutory
authority, and it is <u>those</u> Orders which were sufficient to bar
the Direct Actions.

## C.

Chubb separately argues that even if the 1986 Orders were
proper, Chubb is not bound by them.  Chubb argues that it did not
have proper notice of the 1986 Orders because – despite being a
sophisticated insurer – it could not have thought that it would
be affected by the Orders at the time because it was not a
Manville insurer.  Chubb further argues that because it was not
adequately represented as a future claimant at the proceedings
regarding the 1986 Orders, Chubb is not bound by those Orders and
the subsequent Clarifying Order in light of the due process
concerns identified in <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S.
591 (1997), and <u>Ortiz v. Fibreboard Corp.</u>, 527 U.S. 815 (1999).
<u>See also</u> <u>Wolfert v. Transamerica Home First, Inc.</u>, 439 F.3d 165

36

(2d Cir. 2006); <u>Stephenson v. Dow Chem. Co.</u>, 273 F.3d 249 (2d

Cir. 2001), <u>aff'd by an equally divided Court in pertinent part,</u>

<u>vacated in part on other grounds</u>, 539 U.S. 111 (2003).

Chubb's argument fails for several reasons.  The broad

language regarding the proposed Insurance Settlement Order in the

nationwide August 2, 1984 Notice of Hearing to Consider Approval

of Compromise and Settlement of Insurance Litigation should have

put Chubb - a sophisticated insurer with asbestos-related

insurance policies - on notice with regards to whatever asbestos-

related claims it may have against Travelers and the other

settling insurers.[13]  Indeed, the Court of Appeals rejected a

similar argument in <u>MacArthur</u>: "... MacArthur and all other

interested parties were provided with notice and a hearing before

the settlements were approved by the Bankruptcy Court.  The

notice of proposed settlements issued by the Bankruptcy Court met

the requirements of due process."  <u>MacArthur</u>, 837 F.2d at 94.

Moreover, the Supreme Court recognized that there is an

exception to the due process concerns raised by Chubb "where a

---

[13] The August 2, 1984 Notice provided:

> An order of the Bankruptcy Court shall be obtained providing that
> all persons shall be restrained and enjoined from commencing
> and/or continuing any suit, arbitration or other proceeding of any
> type or nature for any and all claims, demands, allegations,
> duties, liabilities and obligations (whether or not presently
> known) which have been, or could have been, or might be asserted
> by any person against any and all the Settling Carriers based
> upon, arising out of or relating to any or all of the insurance
> policies ....

(Docket No. 3684, Ex. G at 5.)

special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate." Ortiz, 527 U.S. at 846 (internal quotation omitted). Unlike the class action settlements in Amchem and Ortiz, the injunction here is based on the Bankruptcy Court's in rem power over the Manville estate, including the insurance policies. "A bankruptcy court's in rem jurisdiction permits it to 'determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question. The proceeding is 'one against the world.''" Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 448 (2004) (quoting 16 J. Moore, et al., Moore's Federal Practice § 108.70[1], p. 108-106 (3d ed. 2004)). Thus, the Bankruptcy Court's power over the estate allows it to bar Chubb's indirect claims against the estate.

### D.

OneBeacon - and to some extent also Continental - argue that if the Clarifying Order purports to clarify the 1986 Orders as applying to Travelers, then the Clarifying Order should also apply to them as Manville insurers who settled in 1986 pursuant to the same 1986 Orders. The Clarifying Order itself specifies that it applies only to Travelers. Both OneBeacon and Continental filed their own separate motions before the Bankruptcy Court seeking to enjoin the Direct Action Suits filed against them as barred by the 1986 Orders. Those motions remain

pending.

The Bankruptcy Court addressed these pending motions during the July 6, 2004 hearing on Travelers' motion, and found it premature to consider them:

> There are separate motions pending before me for the other carriers to be included, and if and when those motions are actually coming before me without the benefit of having been resolved ... then it is germane at that particular time.

(July 6, 2004 Hearing Tr., at 117.) OneBeacon argues that despite the fact that the Bankruptcy Court has yet to rule on its motion, this issue is ripe for this Court to consider because the Bankruptcy Court's failure to include OneBeacon in the Clarifying Order already affected OneBeacon's contribution and indemnification rights against Travelers. However, there is no Bankruptcy Court ruling for this Court to consider on appeal as to whether the 1986 Orders similarly cover OneBeacon or Continental and thus similarly bar claims against those insurers as well. This issue is not ripe for review until OneBeacon and Continental have a ruling on their separate motions before the Bankruptcy Court.

## E.

The Objecting Claimants argue that the Bankruptcy Court made various procedural errors in approving the settlement. In reviewing the Bankruptcy Court's decision to approve a settlement, this Court's review "is restricted to determining

whether there was a clear abuse of discretion."  <u>Nellis v.</u>
<u>Shugrue</u>, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The Bankruptcy Court
"must make an independent determination when approving a
settlement," but "should not conduct a 'mini-trial' on the
merits."  <u>Id.</u> at 122.

**1.**

The Objecting Claimants argue that the Bankruptcy Court
failed to conduct a thorough analysis of the reasonableness of
the settlement with the Common Law Plaintiffs.  In particular,
the Objecting Claimants allege that the Bankruptcy Court failed
to consider the probability of success in litigation, the
interest of the common law plaintiffs as creditors to the estate,
and the breadth of the release.  The sole evidence provided by
the Objecting Claimants of such allegations is the Bankruptcy
Court's limitation of questioning and proof in connection with
the cross-examination of a single witness.  (<u>See</u> July 6, 2004
Hearing Tr., at 166.)  However, a bankruptcy judge "is not
required to assess the minutia of each and every claim," but
instead "need only canvass the settlement to determine whether it
is within the acceptable range of reasonableness."  <u>Nellis</u>, 165
B.R. at 123 (citing <u>In re W.T. Grant Co.</u>, 699 F.2d 599, 608 (2d
Cir. 1983)).

The Objecting Claimants have failed to show a clear abuse of
discretion.  In light of the fact that the "experience and

knowledge of the bankruptcy court judge is of significance in assessing the propriety of the settlement," Nellis, 165 B.R. at 123, the Bankruptcy Court's over twenty years experience with the Manville reorganization supports the conclusion that the settlement was fair and equitable. The Bankruptcy Court specifically considered the balance between the likelihood of success compared to the present and future benefits of the settlement, the prospect of complex and protracted litigation if the settlements were not approved, the competency and experience of counsel, the relative benefits to the settling parties, the nature and extent of the releases, and the extent to which the settlement was the product of arm's length bargaining. The Bankruptcy Court specifically noted that the settlements provided Manville Claimants with a significant new source of asbestos compensation. (COL ¶¶ 52-54; 2004 WL 1876046, at *36-37.) The Bankruptcy Court considered extensive submissions and heard arguments at the July 6, 2004 evidentiary hearing. The Bankruptcy Court properly found that the settlement was fair and equitable.

## 2.

The Objecting Claimants next challenge as improper the Bankruptcy Court's decision to use the bifurcated approach described in In re "Agent Orange" Product Liability Litig., 818 F.2d 145 (2d Cir. 1987), in approving the settlement with the

Common Law Plaintiffs prior to approving the still-to-be-
determined fund distribution procedures. The Objecting Claimants
argue that the fairness of a settlement cannot be properly
evaluated until the fund distribution procedures are already
known. This argument has no merit and is contradicted by
considerable precedent. See Agent Orange, 818 F.2d at 170 ("To
impose an absolute requirement that a hearing on the fairness of
a settlement follow adoption of a distribution plan would
immensely complicate settlement negotiations and might so
overburden the parties and the district court as to prevent
either task from being accomplished."); Nellis, 165 B.R. at 126
("Approval of a settlement can predate the determination of
individual awards under the distribution plan."); see also
Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1153 (8th Cir. 1999);
In re Holocaust Victim Assets Litig., 105 F. Supp. 2d 139, 149-51
(E.D.N.Y. 2000); In re NASDAQ Market-Makers Antitrust Litig., 187
F.R.D. 465, 480 (S.D.N.Y. 1998); In re Drexel Burnham Lambert
Group, Inc., 130 B.R. 910, 922 (S.D.N.Y. 1991).

### 3.

The Objecting Claimants argue that they received only
eighteen days notice of the proposed settlement, rather than the
twenty day notice required by Fed. R. Bankr. P. 2002(a)(3) for a
"hearing on approval of a compromise or settlement of a
controversy ...." By the Objecting Claimants' calculations,

because the notice of the hearing on the motion to approve the settlement was mailed on June 7, 2004, and the deadline for objections to be filed was June 28, 2004, only eighteen days notice for objections was given, when factoring in the presumed three days mailing time provided for in Fed. R. Bankr. P. 9006(f).

This objection is specious. Rule 2002(a)(3) requires a twenty day notice for a hearing, not for the deadline for filing objections. Here, more than twenty days notice was given for the hearing, which was on July 6, 2004. Moreover, because the Objecting Claimants did, in fact, receive notice of the hearing, timely filed objections, and participated in the hearing, there was no prejudice demonstrated.

**4.**

Certain of the Objecting Claimants (specifically, the "Asbestos Personal Injury Plaintiffs") also argue that the Bankruptcy Court failed to conduct the appropriate analysis regarding the reasonableness of the $20 million attorneys' fees awarded to counsel for the Common Law Plaintiffs. (Objecting Claimants Brief at 39-40.) They argue that the Bankruptcy Court did not examine the factors for approving applications for attorneys' fees identified in Chatelain v. Prudential-Bache Securities, Inc., 805 F. Supp. 209, 216 (S.D.N.Y. 1992) ("In approving applications for attorneys' fees, courts in this

circuit examine the following factors: (1) time and labor expended by counsel; (2) magnitude and complexity of the litigation; (3) risk of the litigation; (4) quality of representation; (5) requested fee in relation to the settlement; and (6) public policy considerations.")

Courts in this circuit also calculate attorneys' fees as a percentage of the recovery, and have granted awards of 15% to 50% of the settlement. Id. at 215. In this case, Travelers paid the $20 million attorneys' fee in addition to the $70 million settlement with the Common Law Plaintiffs, meaning that the attorneys' fees were approximately 22% of the total $90 million recovery, in line with other acceptable percentages identified in Chatelain. Id. at 215-16 (noting that courts have approved attorneys' fees amounting to 25%, 27%, and 28% of recovery).

Moreover, the Clarifying Order specifically found that the attorneys fees of the Common Law Plaintiffs' counsel were "fair, equitable and reasonable in light of the complexity of the litigations and the size of the recoveries for the ... Common Law Direct Action Plaintiffs ...." (Clarifying Order at 4.) Given the Bankruptcy Court's familiarity with the claims in the case and their history and complexity, as well as the significant benefits obtained by the counsel for the Common Law Plaintiffs, there was ample basis for approving the fee. There is no showing that there was a clear abuse of discretion in approving the $20

million attorneys' fee.

**5.**

The Objecting Claimants conclude with a perfunctory argument that the Bankruptcy Court erred in denying their motion to amend findings or for a new trial pursuant to Fed. R. Civ. P. 59. Because, as explained above, the Objecting Claimants have failed to demonstrate that the Bankruptcy Court made a manifest error or caused a manifest injustice, the Bankruptcy Court correctly denied the motion.

**F.**

Finally, the Court considers the merits of the appellants' objections to the judgment reduction provision discussed above with respect to the motion to dismiss.

The Objecting Insurers argue that the judgment reduction provision is unenforceable because the Bankruptcy Court lacked jurisdiction to enter the Clarifying Order. For the reasons discussed above, the Bankruptcy Court had such jurisdiction.

The Objecting Insurers also argue that the judgment reduction provision is unfair to them for various reasons. The Objecting Insurers argue that at least three states in which Direct Action Suits are pending (West Virginia, Ohio, and Massachusetts) permit only pro tanto judgment reduction (i.e., the amount plaintiffs recovered from the settlement fund),

45

meaning that Objecting Insurers could potentially receive zero judgment reduction in some cases if the settlement funds were exhausted. The Objecting Insurers further argue that future claimants could challenge the enforceability of the judgment reduction provision on due process grounds. The Objecting Insurers also protest that they would be burdened by being forced to seek enforcement of the judgment reduction provision in the Bankruptcy Court. OneBeacon additionally argues that the bar order prevents it from taking discovery from Travelers to defend itself in Direct Actions Suits and to enforce the judgment reduction provision. However, OneBeacon and the other Objecting Insurers would be able to seek discovery from Travelers as a third party by normal third party discovery rules.

The Bankruptcy Court's determination that the judgment reduction provision adequately protected the non-settling insurance companies cannot be said to be a clear abuse of discretion, especially where the Bankruptcy Court found that the 1986 Orders already barred contribution and indemnification claims even before the settlement. (COL ¶ 35; 2004 WL 1876046, at *34.) The bar order in the Confirmation Order has been upheld as valid. MacArthur, 837 F.2d at 93; Kane, 843 F.2d at 643 n.4. Moreover, other courts have upheld settlements that seek to ameliorate the harm from bar orders by imposing similar judgment reduction provisions. See Gerber, 329 F.3d at 302-06;

Eichenholtz, 52 F.3d at 487; In re WorldCom, Inc. Securities

Litig., No. 02 Civ.3288, 2005 WL 591189, at *8-9 (S.D.N.Y. March

14, 2005); Worldcom, 339 F. Supp. 2d at 568.

Finally, with respect to the argument that future claimants

would be able to assert due process challenge claims against the

enforcement of the judgment reduction provision, the Second

Circuit Court of Appeals has already rejected such a challenge.

In an unpublished opinion, the Court of Appeals reviewed the

record of the Manville bankruptcy and noted that future claimants

were adequately represented with regards to the confirmation of

the Manville Plan:

> We reject O'Malley's challenge to the performance of
> the Legal Representative of future claimants
> substantially for the reason stated by the Trial Courts
> in their Amended Memorandum, Orders and Final Judgment
> dated January 19, 1995, reported at 878 F. Supp. 473.
> See, e.g., id. at 565 (Legal Representative "took an
> active and aggressive role in protecting future
> claimants" in this litigation).

Joint Eastern and Southern Dist. Asbestos Litig., 1996 WL 77954,

at *1.

The appellants have failed to show that the Bankruptcy Court

abused its discretion in determining that the settlement,

including the judgment reduction provision, was fair and

reasonable.

## CONCLUSION

The Court has considered all of the arguments.  To the
extent not specifically addressed herein, the arguments are
either moot or without merit.  The motions to dismiss are denied.
With respect to the merits of the various appeals, the Bankruptcy
Court's Findings and Clarifying Order are affirmed, except for
the portions relating to the "gate-keeping" provision.  Thus,
paragraph 9(c) of the Clarifying Order is vacated.

**SO ORDERED.**

**Dated:  New York, New York**
        **March 28, 2006**

**John G. Koeltl**
**United States District Judge**